## S99A0551. SEMPLE v. THE STATE.
### (519 SE2d 912)

HINES, Justice.

Derrick Semple was convicted of felony murder and aggravated assault in connection with the death of Antawn Young. He contends that the trial court erred in denying his motion to suppress identification testimony. Because we find the identification testimony was neither highly suggestive nor made misidentification likely, we affirm.[1]

1. Semple, together with Harris and Mason, was riding in Mason's red Geo Tracker. They had consumed alcohol and were looking for a party. At approximately 1:00 a.m., they saw Young walking down the road. The three decided to ask Young for directions and Semple commented on a gold chain Young was wearing, stating that

---

[1] Young was killed on October 25, 1997. On March 3, 1998, a Muscogee County grand jury indicted Semple for malice murder, felony murder, aggravated assault, criminal attempt to commit armed robbery, and possession of a firearm during the commission of a felony. The trial took place August 3-4, 1998, and the jury found Semple not guilty of malice murder, and guilty of both felony murder and aggravated assault; no verdict was reached on either the criminal attempt or possession charges. The aggravated assault charge merged with the felony murder charge for purposes of sentencing, and on August 4, 1998, Semple was sentenced to life in prison. On September 10, 1998, he filed a motion for an out-of-time appeal, which was granted on September 18, 1998. He filed a notice of appeal on September 25, 1998. His appeal was docketed in this Court on January 11, 1999, and submitted for decision without oral argument on March 8, 1999.

he should "snatch it" from Young. Mason stopped the car and Semple and Harris got out and approached Young, who gave them directions; Mason remained in the vehicle. Harris began walking back to the car and looked back to see Semple and Young "scuffling." He and Mason then heard three gunshots. Semple and Harris ran back to the vehicle, Mason drove off, and Semple stated that he had shot Young after Young attempted to grab Semple's pistol.

At the time of the shooting, White was leaving his nearby apartment. He saw the three men standing at the roadside and heard some "mumbling and grumbling." White then saw a flash, heard the sound of gunfire, and saw Young fall to the ground. The shooter and the other man ran towards White who, fearful, retreated to his apartment; White could still see where the victim lay, and could see the vehicle the men entered, which he described as an orange Geo Tracker. White described the shooter to the police a few hours after the shooting.

At the scene, casings and slugs from .45 caliber Winchester silver-tipped bullets were recovered. The murder weapon was not recovered, but Semple owned a Glock .45 caliber pistol, and ammunition matching that which was found at the scene was discovered in Mason's house. Harris and Mason individually turned themselves into the police two days after the shooting, gave videotaped statements, and identified Semple as the shooter. They also told the police that Semple was planning to get rid of the gun and possibly flee the area. Both testified against Semple at trial.

The evidence was sufficient to enable a rational jury to find beyond a reasonable doubt that Semple was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court denied Semple's motion to suppress White's identification testimony. Semple argues White's identification testimony should have been excluded as the result of a tainted identification procedure because two or three days after the crimes, White saw a televised photograph of Semple, identifying him as one of the men arrested for Young's murder. See *Neil v. Biggers*, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401) (1972). Before the photograph was televised, White described Semple to the police as a light skinned African-American man, or possibly a Caucasian man. Semple argues the taint to the identification due to the televised photograph was reinforced when White saw Semple seated next to his counsel at a pretrial hearing, after counsel had spoken with White and identified himself as Semple's attorney. However, the principle expressed in *Neil v. Biggers* deals with the suggestiveness of an identification procedure used by police, and applies only to state action. *Lyons v. State*, 247 Ga. 465, 466-467 (277 SE2d 244) (1981). See also *United States v.*

*Peele*, 574 F2d 489 (9th Cir. 1978). There is no evidence that the police or any other state actors were involved with televising Semple's photograph or otherwise suggesting an identification to White; it is uncontroverted that White was not shown a lineup or photographs of any suspects.

Even if this situation is viewed as one in which an impermissively suggestive identification procedure could be, and was, employed, the court did not err in denying the motion. In such a case, the question is whether there was a very substantial likelihood of irreparable misidentification. *Gravitt v. State*, 239 Ga. 709, 710 (4) (239 SE2d 149) (1977). Factors to be considered in answering that inquiry include: (1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the accused; (4) the witness's level of certainty at the confrontation with the accused; and (5) the length of time between the crime and the confrontation. *Thomason v. State*, 268 Ga. 298, 303-304 (3) (486 SE2d 861) (1997). The ultimate question is, whether under the totality of the circumstances, the identification is reliable. *Neil v. Biggers*, supra at 199; *Messer v. State*, 247 Ga. 316, 321 (3) (276 SE2d 15) (1981).

The crimes occurred under a street light and White saw them from a distance sufficient for reasonable acuity. He was able to observe Semple as Semple ran towards him, although he was distracted by his desire to retreat inside. The showing of Semple's photograph on television was just two or three days after the crimes, and the description White gave police before the photograph was televised comported with the description he gave at trial. Most importantly, the level of certainty between his first description and his in-trial identification was consistent; his early description was apparently only general,[2] and when asked at trial if there was doubt in his mind that Semple was the man he saw, White simply testified that "[t]he description fits him," and that he could not be "one hundred percent" it was Semple. Despite this uncertainty, White was unequivocal that it was the taller man with the lighter complexion who shot Young, and it is undisputed that, in comparison to Harris, such a description fits Semple. Harris testified that it was Semple who shot Young.

That White saw Semple seated at the defense table with the man White knew to be defense counsel did not require exclusion of the identification testimony. See *McClesky v. State*, 245 Ga. 108, 110 (2) (263 SE2d 146) (1980). Issues of witness credibility are for the trier of

---

[2] White's written statement to police was not introduced at the pretrial hearing or at trial.

fact, see *Lyons*, supra, and matters such as the basis for White's identification of Semple and his ability to view Semple at the crime scene, were simply subjects for cross-examination and did not require that White's identification testimony be excluded. See *Ralston v. State*, 251 Ga. 682, 684 (2) (309 SE2d 135) (1983).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 13, 1999.

*Michael E. Garner*, for appellant.

*J. Gray Conger, District Attorney, George E. Lipscomb II, Melvin E. Hyde, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Daniel G. Ashburn, Assistant Attorney General*, for appellee.