S00A0027. DAVIS v. THE STATE.
S00A0028. HILL v. THE STATE.
(528 SE2d 800)

FLETCHER, Presiding Justice.

Henry Davis, Jr. and Michael Hill were convicted of malice murder, felony murder and aggravated assault[1] in the shooting death of Ray Barlow. Their co-defendant, Keiunta Guy, was convicted of felony murder and aggravated assault. Davis appeals the sufficiency of evidence and the admission of evidence which he maintains improperly placed his character in evidence. We find no error and affirm his convictions. In a separate appeal, Hill argues that the admission of Davis's redacted statement inculpating Hill in the murder violated his Sixth Amendment rights under *Bruton v. United States*.[2] We agree and, because we cannot say that this error was harmless beyond a reasonable doubt, reverse Hill's conviction.

The evidence presented at trial shows that on January 13, 1996, Ray Barlow was shooting dice with a number of other persons at the home of Vincent Henderson. There was evidence that the Henderson

---

[1] The crimes occurred on January 13, 1996, and a grand jury indicted Davis and Hill on June 11, 1996. Following a trial, on February 21, 1997 the jury found the defendants guilty of the crimes charged. The trial court merged the convictions for aggravated assault and felony murder into the convictions for malice murder, and sentenced defendants to life imprisonment for malice murder. Hill filed a motion for new trial which was amended on November 17, 1998, and denied on April 30, 1999. Hill filed a notice of appeal to this Court on May 12, 1999. Davis's motion for new trial and motion to pursue an out of time appeal were filed on July 14, 1998. His motion for new trial was amended on November 12, 1998, and denied July 2, 1999. Davis filed his notice of appeal to this Court on July 7, 1999. Both cases were docketed in this Court on September 17, 1999, and submitted for decision on briefs on November 8, 1999.

[2] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

residence was routinely used by neighborhood residents for gambling and the sale of crack cocaine. While Barlow was gambling, Henry Davis came in the house and complained that he was not being given a "house cut" for allowing the gambling to take place. Davis and Barlow argued over the entitlement to gambling winnings and shoved one another. Henderson and his brother, Anthony, intervened and Davis left. Barlow refused Vincent Henderson's request to leave the premises.

Shortly thereafter Davis returned, accompanied by Michael Hill and their co-defendant, Keiunta Guy. The three men initially ran into the kitchen where Barlow had been gambling, then pursued Barlow through the house into a bedroom. Eyewitnesses testified that Davis and Hill were armed with pistols, while Guy had a shotgun. Two witnesses testified that Barlow sat in a chair behind the bedroom door and that they saw Hill fire his weapon. However, no witness was able to testify that he or she saw Hill shoot Barlow. The state presented no evidence that either Davis or Guy fired a weapon, but eyewitnesses testified that both Davis and Guy struck Barlow in the head with their guns. Anthony Henderson testified that Michael Hill asked Barlow if he was "ready to die for what he did." Another witness testified that when Hill stopped to reload his gun, Davis said, "pop him again."

The medical examiner testified that Barlow sustained five gunshot wounds, and several blunt force head injuries consistent with being pistol-whipped. The fatal shot penetrated Barlow's lungs.

Defendant Hill was arrested on unrelated charges later that same day, and a gun was seized from his person pursuant to the arrest. In a police interview several days after the murder, Davis stated that Hill shot Barlow, and that the murder weapon had already been seized by police from Hill's person in an unrelated arrest. Davis's statement led police to recover Hill's gun from the police property room. At trial the state's firearms examiner testified that the bullets which killed Ray Barlow had been fired from this gun.

## *S00A0027. Davis v. State*

1. Reviewing the record in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Henry Davis guilty beyond a reasonable doubt of the crimes of which he was convicted.[3] Contrary to his contention, Davis was not merely a bystander during the commission of the murder. Rather, the evidence showed that Davis quarreled with the victim, then left the premises,

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

returning with a gun and two armed men. The three men pursued the victim throughout the house until he was cornered in a bedroom behind the door. The victim was then shot repeatedly. While Hill reloaded his weapon, Davis exhorted Hill to "pop him again." Additionally, eyewitnesses testified that Davis hit the victim in the head with his weapon.

2. Vincent Henderson testified that after Davis left his house, he tried to get Ray Barlow to leave also, because he knew Davis was "fixing to go home and get something." When the state inquired what Henderson meant by that, Henderson replied, "I know he was going home and get a gun or something."

Davis then moved for a mistrial, arguing that this testimony impermissibly placed his character in evidence. The court denied the motion for mistrial, but stated that it would instruct the jury to disregard this statement. However, no curative instructions were given.

On appeal Davis maintains that the state elicited this testimony in order to show that he "had a reputation for bad character." We do not agree. Gun ownership and the custom of carrying a gun do not, by themselves, impute bad character.[4] Further, Henderson's statement was relevant to his testimony that he asked Barlow to leave because he was attempting to break up an escalating argument. It was additionally relevant to other testimony that Davis did, in fact, return with a gun and two armed men. Evidence relevant to an issue in the case is not rendered inadmissible because it may incidentally place the defendant's character in issue.[5] The trial court did not abuse its discretion in denying the motion for mistrial.

3. Nor did the trial court err in denying Davis's motion for mistrial following an emotional outburst in the courtroom. During the state's case the investigating officer was asked to identify clothing the victim had been wearing at the time of the murder. A member of the victim's family began to cry and left the courtroom; other spectators followed her. The record does not indicate whether the jury was aware that the outburst involved the victim's friends or relatives.

The trial court denied Davis's motion for a mistrial, but gave curative instructions to the jury to disregard the incident. In these circumstances there was no abuse of the trial court's discretion.[6]

4. After Davis was implicated in the crime by eyewitnesses, police obtained a search warrant for his residence. During the search police found a loaded .38 caliber handgun. Davis contends that the trial court erred in admitting this gun in evidence because the state

[4] *Gomillion v. State*, 236 Ga. App. 14, 17 (512 SE2d 640) (1999).

[5] *Johnson v. State*, 260 Ga. 457, 458 (396 SE2d 888) (1990).

[6] *Lowe v. State*, 267 Ga. 410 (3) (478 SE2d 762) (1996); *Byrd v. State*, 262 Ga. 426 (1) (420 SE2d 748) (1992).

failed to prove that this was the weapon he allegedly used to strike the victim.

The eyewitnesses to the crime testified that Davis pistol-whipped the victim with a handgun. The medical examiner testified that the wounds on the victim's head were consistent with those which would be made by a handgun such as the one seized from Davis's residence.

A weapon is generally admissible if it is similar to the one used in the crime even though it is not conclusively shown to be the same one.[7] The jury in this case was authorized to determine whether the gun admitted in evidence was the weapon used by Davis to strike the victim.[8] Any discrepancies between the eyewitnesses' description of the weapon used by Davis went to the weight and credibility of the evidence rather than to its admissibility.[9]

### S00A0028. Hill v. State

5. The evidence presented at trial was sufficient to authorize a rational trier of fact to find Michael Hill guilty of the crimes for which he was convicted.[10]

6. Hill argues that the admission in evidence of Davis's statement to police which inculpated Hill in the murder violated his Sixth Amendment right to confront witnesses under *Bruton v. United States*.[11] In addressing this issue we must first determine whether the admission of Davis's statement violated Hill's confrontation clause rights,[12] and, if so, whether the error was harmless beyond a reasonable doubt.[13]

*Bruton* held that the admission of a statement of a non-testifying co-defendant which inculpates the defendant unconstitutionally deprives that defendant of the Sixth Amendment right to cross-examine witnesses, even where the jury is instructed to limit its consideration of the statement to the co-defendant who made it. While a non-testifying co-defendant's statement which is redacted so that it eliminates any reference to the existence of the defendant will withstand scrutiny under *Bruton* so long as it is accompanied by instructions limiting its use to the case against its maker,[14] a non-testifying

---

[7] *Parker v. State*, 226 Ga. App. 462 (4) (486 SE2d 687) (1997).

[8] Id.; *Clements v. State*, 226 Ga. 66 (1) (172 SE2d 600) (1970).

[9] *Parker v. State*, 226 Ga. App. at 464.

[10] *Jackson v. Virginia*, 443 U. S. 307.

[11] 391 U. S. 123.

[12] *Hanifa v. State*, 269 Ga. 797, 804 (505 SE2d 731) (1998).

[13] *Schneble v. Florida*, 405 U. S. 427 (92 SC 1056, 31 LE2d 340) (1972); *Starks v. State*, 266 Ga. 547, 549 (468 SE2d 376) (1996).

[14] *Richardson v. Marsh*, 481 U. S. 200 (107 SC 1702, 95 LE2d 176) (1987).

co-defendant's statement which is redacted by merely replacing the defendant's name with a blank or symbol violates *Bruton* regardless of whether limiting instructions are given.[15] As the U. S. Supreme Court held, to replace the defendant's name "with an obvious blank will not likely fool anyone."[16] Instead statements which, despite redaction, refer directly to a person whom the jury may infer to be the defendant run afoul of the confrontation clause "even w[h]ere the confession [is] the very first item introduced at trial."[17]

In *Hanifa v. State*[18] this Court applied these authorities, holding that

> unless the statement is otherwise directly admissible against the defendant, the Confrontation Clause is violated by the admission of a non-testifying co-defendant's statement which inculpates the defendant by referring to the defendant's name or existence, regardless of [whether there are] limiting instructions or of whether the incriminated defendant has made an interlocking incriminating statement.[19]

In *Hanifa* the non-testifying co-defendant's confession had been redacted to describe the participation of Hanifa and her other co-defendants in the crime by use of the words "someone" or "others" or "they." This Court held that despite the use of these generic terms, the jury was notified that a person's name had been redacted, and therefore admission of the statement constituted a violation of *Bruton*.

In this case Davis made a pre-trial statement to police naming Hill as the person who repeatedly shot the victim, and Guy as the person who hit the victim in the head with a gun. Davis did not incriminate himself in this statement other than to admit presence at the scene. Thereafter Davis responded to a series of police questions regarding Hill's role in the murder. The state redacted Davis's statement and responses to police questioning by substituting "someone" and "anybody" for the names of Hill and Guy. Both Davis's redacted statement and redacted interview were offered in evidence. The trial court did not instruct the jury that this evidence should be considered only with regard to Davis. As read to the jury, Davis's redacted statement maintained that "someone kept shooting at Ray,

---

[15] *Gray v. Maryland*, 523 U. S. 185 (118 SC 1151, 140 LE2d 294) (1998).
[16] 118 SC 1151, 1155.
[17] 118 SC 1151, 1157.
[18] 269 Ga. 797.
[19] 269 Ga. at 803.

someone kept shooting til the gun was empty . . . and then someone reloaded a gun and shot Ray one more time." Neither Davis, Hill nor Guy testified at trial.

Because Davis's statement was admitted in evidence after the state's eyewitnesses identified Hill as the shooter and testified that after firing his gun multiple times he reloaded it, it is likely that the jury immediately recognized Hill as the "someone" whom Davis contended shot the victim until the gun was empty and then reloaded. The likelihood that the jury attributed these actions to Hill is increased by the fact that although the eyewitnesses identified three men involved in the murder, Davis did not implicate himself in his statement or his interview. Thus, Davis's statement left the jury to choose between Hill and Guy as the shooter.

Additionally, in his redacted responses to the interview, Davis informed the police that they already possessed the murder weapon, seized in a prior arrest in which "they locked someone up." Shortly after Davis's redacted statement and interview were admitted in evidence, an investigator for the state testified that this portion of Davis's interview led him to obtain an arrest report for "Michael Hill" which was unrelated to the murder charges, and that this arrest report led him to recover a gun seized in this arrest. The state offered evidence that this gun was the murder weapon. Thus, any doubt the jury may have had that Hill was the "someone" whom Davis maintained committed the murder was eradicated by testimony the state deliberately elicited from its own witness.

Because Hill had no opportunity to cross-examine Davis's inculpatory statements against him, his Sixth Amendment rights were violated.[20] Further, upon review of the entire record, we cannot say that this error was harmless beyond a reasonable doubt, and therefore reverse Hill's conviction.

Hill did not give an inculpatory statement or testify, but instead exercised his right to remain silent. His co-defendants did not testify at trial and therefore were not subject to cross-examination. Because Davis's statement referred to only two active participants in the crime and did not inculpate Davis, it was likely that the jury connected Hill with the "someone" Davis maintained shot the victim, particularly in view of the fact that the statement did not come in until after eyewitnesses testified that Hill was the only one of three participants who fired a weapon. The state magnified the error in admitting Davis's statement by the order in which it presented its

---

[20] While the trial of this case predated the Supreme Court's decision in *Gray v. Maryland,* and this Court's decision in *Hanifa,* supra, an appellate court applies the law as it exists at the time an opinion is rendered. *Elmore v. State,* 269 Ga. 528 (4) (501 SE2d 215) (1998).

case, and by eliciting testimony from one of its witnesses that Michael Hill was indeed the "someone" referred to in Davis's statement who was arrested in possession of the murder weapon. Further, the trial court did not instruct the jury to consider the redacted statement solely as evidence against Davis. We are unable to say that in arriving at its verdict the jury disregarded the obvious connection between Hill and the "someone" whom Davis maintained committed the murder, or the impact of the investigator's testimony linking Hill to Davis's statement. Because the error was not harmless beyond a reasonable doubt, Hill's conviction is reversed.

By contrast we note that other cases in which a *Bruton* violation has been held not so harmful as to require reversal were decided on the basis of factors not present in this case: in many instances the defendant against whom the redacted inculpatory statement was offered admitted limited participation in the crime;[21] or in addition to the inculpatory statement, co-defendants testified against the defendant at trial and were subject to cross-examination;[22] or there were so many other participants in the crime that it was less likely that the jury associated the redacted name in the erroneously admitted statement with the defendant.[23] Additionally, in *Hanifa,* supra, this Court noted that because the erroneously admitted statement came into evidence prior to the testimony of her co-indictees and because the trial court instructed the jury to consider the redacted statement only against its maker, there was less likelihood that the jury connected Hanifa to the "someone" in the statement, and therefore less likelihood that this error contributed to the verdict.[24]

Because the remaining errors enumerated in Hill's appeal are likely to recur at any retrial of this case, we address them.

7. Some hours after the murder took place Hill was observed by a police patrol walking with a third party. When the third party "threw down a marijuana cigar" the police arrested him. According to police testimony, Hill was under the influence of alcohol and began swearing at the officers. When Hill attempted to prevent his companion's arrest, he was also arrested. During a search of his person, a .357 magnum was found. Henry Davis's police interview thereafter linked this gun to the murder of Ray Barlow.

On appeal Hill concedes the evidentiary relevancy of the gun seized from his person,[25] but argues that the state impermissibly

---

[21] See *Hanifa v. State,* 269 Ga. 797; *Borders v. State,* 270 Ga. 804 (514 SE2d 14) (1999); *Montijo v. State,* 238 Ga. App. 696 (520 SE2d 24) (1999); *Rooks v. State,* 238 Ga. App. 177 (518 SE2d 179) (1999).

[22] See *Hanifa,* 269 Ga. 797; *Borders,* 270 Ga. 804.

[23] Id.

[24] 269 Ga. 797, 804.

[25] See *Benford v. State,* 272 Ga. 348 (528 SE2d 795) (2000).

injected his character in evidence by offering testimony that he was intoxicated and obstreperous. Because the gun seized from Hill during this arrest was highly relevant to the state's case, limited testimony regarding other circumstances of this arrest was not error, even though it may have incidentally placed Hill's character in issue.[26] The admission of this evidence lay within the sound discretion of the trial court, and we find no abuse of that discretion.[27]

8. The pre-trial photo array shown Rochelle Caldwell, an eyewitness to the shooting, was not impermissibly suggestive simply because Hill was the only person depicted with dreadlocks.[28] Ms. Caldwell testified that she knew Hill from her neighborhood and recognized him when he entered the Henderson home. The officer who displayed the photo array to Ms. Caldwell testified that she immediately picked out Hill's photo. Further, because Ms. Caldwell testified that Hill was wearing a hat at the time of the shooting it is unlikely that Hill's hairstyle was a factor in her pre-trial identification.

The fact that the photos were dated and that at least one of the photos was five years old does not make the line-up impermissibly suggestive given Ms. Caldwell's testimony that she did not notice the dates on the photos or any differences in the ages of the participants, but selected Hill because she knew him prior to the shooting and recognized him as one of the three perpetrators.

9. Hill's contention that the pattern jury charges on credibility of witnesses are in conflict and misleading to the jury has been decided adversely to him.[29]

*Judgment affirmed in Case No. S00A0027 and reversed in Case No. S00A0028. All the Justices concur.*

DECIDED MAY 1, 2000.

*Rodney S. Zell*, for appellant (case no. S00A0027).
*Henry A. Hibbert*, for appellant (case no. S00A0028).
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys, Thurbert E. Baker,*

---

[26] *Waldrip v. State*, 267 Ga. 739, 748 (482 SE2d 299) (1997). Further, it has been held that the consumption of alcohol by an adult is irrelevant to the issue of character. *Mungin v. State*, 183 Ga. App. 290 (3) (358 SE2d 673) (1987).

[27] *Benford*, 272 Ga. at 350.

[28] *Miller v. State*, 270 Ga. 741 (512 SE2d 272) (1999); *Manning v. State*, 207 Ga. App. 181 (427 SE2d 521) (1993).

[29] *Mallory v. State*, 271 Ga. 150 (2) (517 SE2d 780) (1999).

*Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General,* for appellee.