S04A0906. SWEET v. THE STATE.
(602 SE2d 603)

HINES, Justice.
Following a jury trial, D'Andre Tylon Sweet was convicted of malice murder and aggravated assault in connection with the fatal

shooting of Carl Scott. This Court previously affirmed the convictions, but remanded the case to the trial court so that Sweet might raise his claims of ineffective counsel. See *Sweet v. State*, 276 Ga. 545 (580 SE2d 231) (2003). Sweet now appeals the denial of his amended motion for new trial challenging his counsels' effectiveness. For the reasons which follow, we affirm.

The circumstances of the crimes are set forth in the prior appeal. On July 8, 1995, Sweet and four others were traveling in a burgundy Nissan Altima on Campbellton Road in Atlanta. Sweet was armed with a .25 caliber handgun and was seated in the front passenger seat. Carl Scott and his wife were walking along Campbellton Road. The burgundy Nissan was driven past the Scotts, and Sweet instructed the driver to turn around and stop because he wanted to get some money. Sweet left the car, approached Scott and attempted to rob him; Sweet then shot Scott in the head, killing him. Witnesses were able to describe Sweet's clothing and the car in which he fled. Approximately an hour later, police located the car about four miles from the crime scene. The murder weapon was found under the seat in which Sweet had been sitting. As the car's occupants were being taken to the police station, Sweet asked his fellow passenger, Arbee, to exchange shirts with him and suggested that they blame another passenger, Jefferson, for the shooting.

After Sweet's trial and convictions, his trial counsel filed a motion for new trial but died shortly thereafter. Sweet was appointed new appellate counsel ("second attorney"); however, the trial court granted a change of counsel, and another appellate counsel ("third attorney") amended the new trial motion. The amended motion was denied and Sweet's third attorney asked to withdraw from representing him. The Office of the Public Defender was appointed to represent Sweet ("fourth attorney"), but shortly thereafter asked to withdraw because of a conflict. Withdrawal was permitted and a fifth attorney was appointed for Sweet. This fifth attorney filed an additional amended motion for new trial, which challenged the effectiveness of trial counsel, Ms. Bullock, as well as raising claims of the ineffectiveness of Sweet's third attorney, appellate counsel, Ms. Jackson.

> In order to prevail on a claim of ineffective assistance, appellant "must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [Cits.]" [Cit.] Appellant "must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." [Cit.] In reviewing a lower court's determination of a claim of ineffective assistance of

counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo. [Cit.]

*Bales v. State*, 277 Ga. 713, 715 (2) (594 SE2d 644) (2004). Here, the trial court found that counsels' actions complained of by Sweet were primarily the result of trial strategy and were reasonable; that Sweet failed to establish that the actions of trial counsel or appellate counsel, Jackson, deprived him of the right to counsel as guaranteed by the Sixth Amendment; and that there was not a reasonable probability that the outcome of the trial would have been different had trial counsel taken the actions urged by Sweet.

1. Sweet contends that his trial and appellate counsel failed to provide effective assistance because trial counsel did not challenge the pretrial identification of Sweet by the victim's wife, Teresa Scott, and appellate counsel did not raise trial counsel's ineffectiveness for not doing so. Citing, inter alia, *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972), he argues that the totality of the circumstances surrounding Ms. Scott's identification of him at the preliminary hearing indicated that the identification process was unreliable and could have resulted in a substantial likelihood of misidentification; therefore, trial counsel was obligated to challenge the pre-trial identification, by way of a motion to suppress, and appellate counsel should have raised an ineffective assistance of counsel claim against trial counsel for her omission. But the contentions are unavailing.

First, the evidence adduced at the hearing on the amended motion for new trial failed to show that Ms. Scott's pretrial identification of Sweet was unreliable or in any manner illegal. It appears that initially Ms. Scott identified Sweet as the shooter just prior to the preliminary hearing when she saw him outside the courtroom looking through a window along with some other men, and she pointed him out to a relative. This identification can hardly be deemed to be suggestive or illegal. Second, "the principle expressed in *Neil v. Biggers*, deals with the suggestiveness of an identification procedure used by police, and applies only to state action. [Cits.]" *Semple v. State*, 271 Ga. 416, 417 (2) (519 SE2d 912) (1999). Furthermore, even if a pretrial identification is tainted, an in-court identification of the perpetrator is not constitutionally inadmissible if it is not dependent upon the prior identification but rather has an independent origin. *Wilson v. State*, 275 Ga. 53, 59 (3) (562 SE2d 164) (2002). Ms. Scott was an eyewitness to her husband's murder and recognized Sweet from viewing the shooting. Any discrepancy between Ms. Scott's initial description of the shooter and Sweet's physical characteristics was ultimately an issue of witness credibility.

Sweet has simply failed to demonstrate any reasonable probability that a motion to suppress on the grounds urged would have been granted; therefore, he cannot show that the failure to make such a motion constituted deficient performance by trial counsel. See *Brady v. State*, 270 Ga. 574, 578 (4) (b) (513 SE2d 199) (1999). Accordingly, Sweet's claim of the ineffectiveness of appellate counsel fails as well.

2. Sweet next contends that trial and appellate counsel failed to provide effective assistance insofar as neither presented the testimony of Benjamin Harold Moon as a defense witness. He argues that he made both trial and appellate counsel aware that Moon would have testified that the traffic on the evening in question was bumper-to-bumper with everyone jumping in and out of the car in order to fraternize with people in the area, thereby impeaching the testimony of State's witnesses, Arbee and Thomas.

But the decisions on which witnesses to call are the province of the lawyer after consultation with his client. *Dewberry v. State*, 271 Ga. 624, 625 (2) (523 SE2d 26) (1999). Here, the record demonstrates that the tactical decisions by both trial and appellate counsel not to call Moon to the stand on Sweet's behalf cannot be found to be unreasonable as a matter of law because Moon was uncooperative. Id. At the hearing on the amended motion for new trial, appellate counsel Jackson testified that she conferred with Sweet about calling Moon as a witness at the hearing on the original motion for new trial as amended. Sweet related that at the time of trial Moon was too afraid to come forward and state who actually did the shooting, but that he thought that Moon would then be willing to say that Sweet was not the shooter. Jackson told Sweet that she saw no benefit in having Moon take the stand if he was not ready to reveal the identity of the shooter. Nevertheless, Jackson had a telephone conversation with Moon, but Moon "wasn't willing to say anything," including whether Sweet committed the shooting.

3. There is likewise no merit to Sweet's assertion that trial and appellate counsel were ineffective because neither presented Danielle Patenaude as a defense witness. Sweet argues that inasmuch as Patenaude would have testified that on the evening of the shooting, she was at Sweet's apartment and she did not see any blood on his clothing, this would have rebutted the prosecutor's suggestion that Sweet was the shooter because any close range shot would have left blood on Sweet's clothing; Sweet further argues that the testimony would have contradicted the State's evidence that he and his friends did not stop anywhere after the shooting. However, at the hearing on the amended motion for new trial, Patenaude testified that she did not know what time the shooting happened, therefore, she was unsure whether her encounter with Sweet and his friends occurred before or after the shooting. What is more, attorney Jackson testified

that she did not recall Sweet ever giving her Patenaude's name. Thus, Sweet cannot show that either trial or appellate counsel was deficient in not calling Patenaude as a witness for the defense. *Bales v. State*, supra at 715 (2).

4. Sweet next contends that trial counsel failed to provide effective assistance because she failed to request any scientific analysis of the clothing worn by him and by Jefferson, the passenger in the car whom he had indicated was the shooter. He argues that from the forensic evidence, trial counsel knew that the murder weapon was fired by someone in the vehicle, and this coupled with the fact that counsel knew that he had previously implicated Jefferson, required that counsel request that his clothing as well as Jefferson's be tested for gunpowder residue.

In general, matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel. *Bales v. State*, supra at 715 (2). Here, under the evidence of record, it cannot be found that trial counsel's apparent decision to forego such forensic analysis of the clothing was unreasonable. The evidence was that the murder weapon was found under Sweet's seat and that Sweet had attempted to change shirts with another passenger. Therefore, any such testing of the clothing would likely have been incriminating rather than exculpatory.

5. At trial, a police officer testified that in his opinion a passenger seated in the rear of the vehicle would not have been able to put the weapon as far forward under the front passenger seat as it was found. Sweet asserts that trial counsel failed to provide effective assistance because she did not object to this testimony concerning the location of the murder weapon. However, trial counsel did cross-examine the officer and got him to agree that in most cars, someone in the back could push something up to the front. This apparent trial strategy, that is, avoiding an objection that would draw the jury's attention to the statement, and instead challenging the testimony through cross-examination cannot be found to be outside the wide range of reasonable professional assistance. *Rivers v. State*, 271 Ga. 115, 118 (2) (b) (516 SE2d 525) (1999).

6. Sweet received a letter, apparently from Jefferson. Because of a statement in the letter about the writer's concern that Sweet would "rat" on him, trial counsel sought to introduce it into evidence to show that Jefferson was really the shooter. Sweet now contends that trial counsel failed to provide effective assistance because she did not request a redaction of the letter's references to Sweet as "blood"; this, Sweet claims, unfairly prejudiced him and impermissibly placed his character at issue in violation of OCGA § 24-2-2 because such references encouraged the jury to believe that the shooting was gang related.

However, Sweet has failed to establish his premise that the references to "blood" connoted gang activity or involvement or in any manner impugned his character. In fact, appellate attorney Jackson testified that she never had the impression of any undercurrent of gang activity. Thus, Sweet cannot show that trial counsel was deficient in her handling of this defense evidence, much less that he was prejudiced by her actions. *Bales v. State*, supra at 715 (2).

7. Sweet has likewise failed to demonstrate that trial counsel was ineffective insofar as she failed to object to what he characterizes as "prejudicial bad character evidence" presented against him through the testimony of Arbee. Sweet cites Arbee's testimony that: (1) Sweet insisted on changing shirts with Arbee after the group was arrested; (2) while at the jail, Sweet telephoned Arbee and suggested that they lie and name another passenger in the car as the shooter; and (3) Sweet "ain't really bad without that pistol."

However, objections to the admissibility of the testimony as impermissible bad character evidence would have failed. All circumstances with an accused's arrest are admissible if they are shown to be relevant. *Benford v. State*, 272 Ga. 348, 350 (3) (528 SE2d 795) (2000). This is so even if the evidence incidentally puts the accused's character in issue. Id. at 350, n. 2. Sweet's attempts to switch clothing and to frame another for the shooting were relevant as evidence of Sweet's consciousness of guilt. As to the comment about Sweet's carrying a pistol, "[g]un ownership and the custom of carrying a gun do not, by themselves, impute bad character." *Davis v. State*, 272 Ga. 327, 329 (2) (528 SE2d 800) (2000).

8. Sweet contends that both trial and appellate counsel were ineffective because neither "properly challenged" improper closing argument by the prosecutor.

The first instance cited is the prosecutor's statement that "birds of a feather flock together," which Sweet claims impugned his character by suggesting that he associated with criminals. Trial counsel in fact objected, but Sweet urges that counsel should have moved for a mistrial. However, Sweet has not shown either that counsel's tactical decision not to move for a mistrial was outside the range of reasonably effective assistance or that a mistrial would have been granted but for counsel's decision to forego requesting one. *Allen v. State*, 277 Ga. 502, 503 (3) (a) (591 SE2d 784) (2004). Moreover, at the hearing on the amended motion for new trial, attorney Jackson opined that to press the issue by moving for a mistrial might have unduly emphasized the matter to the jury. See *Rivers v. State*, supra at 118 (2) (b).

The second instance cited by Sweet is when trial counsel did not object to a comment that Sweet "goes around robbing people." A

decision by trial counsel not to object to statements in closing argument may fall within the ambit of trial strategy, and in the absence of evidence to the contrary, trial counsel's actions are presumed to be strategic. *Holmes v. State*, 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001). Moreover, even assuming that trial counsel should have objected to the comment, Sweet has not shown that but for counsel's failure to object, there was a reasonable probability that he would not have been convicted. *Bales v. State*, supra at 715 (2); *Braithwaite v. State*, 275 Ga. 884, 886 (2) (b) (572 SE2d 612) (2002). Thus, this contention of the ineffectiveness of trial counsel fails as does the assertion that appellate counsel was ineffective for failing to make such claim against trial counsel.

9. Finally, there is no merit to Sweet's contention that trial counsel was ineffective because she did not request that the jury be given "the mere association charge" even though it was needed to "buttress [Sweet's] victim of circumstance defense." Sweet fails to specify exactly what jury instruction should have been given. What is more, Sweet acknowledges that counsel requested and received a jury charge on mere presence. In any event, "[c]ounsel's decision as to which requests to charge to pursue in light of the defense theory is a strategic one." *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003). And once again, Sweet has failed to show that trial counsel's strategy was unreasonable or that the failure to request some type of instruction on "mere association" would have altered the outcome at trial. *Bales v. State*, supra at 715 (2).

*Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs in judgment only.*

CARLEY, Justice, concurring.

I fully agree with the majority opinion, but write separately to examine more specifically Appellant's contention, as stated in Divisions 2 and 3, that the attorney who first amended the motion for new trial was ineffective in failing to present the testimony of two individuals as "defense" witnesses. Obviously, as appellate counsel, that lawyer could not have called those individuals at trial, but only, as the majority notes in Division 2, at the first motion for new trial hearing. It is apparent from the majority opinion that the testimony of such witnesses at that hearing would have been relevant only to the determination of trial counsel's effectiveness. Thus, subsequent production of that testimony could be material to whether the appellate counsel who first amended the motion for new trial was herself ineffective when she failed to assert trial counsel's ineffectiveness in not calling the witnesses. However, Appellant does not make any such contention. Instead, he maintains only that that appellate attorney was ineffective for failing to call the two witnesses to testify in

support of the grounds which she raised in the amended motion for new trial. Moreover, our previous remand rendered "moot [A]ppellant's claim that his first appellate counsel was ineffective for failing to raise the effectiveness of trial counsel in the new trial motion she filed in 1997." *Sweet v. State*, 276 Ga. 545, 548, fn. 9 (580 SE2d 231) (2003).

DECIDED SEPTEMBER 13, 2004.

*Lawrence Lewis*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney, Thurbert E. Baker, Attorney General, Chad E. Jacobs, Assistant Attorney General*, for appellee.