295 Ga. 10
FINAL COPY

S14A0034. BONNER v. THE STATE.

BLACKWELL, Justice.

Anthony Bonner was tried by a Bibb County jury, and he was convicted of the murder of Terry Adams, the aggravated assault of Kenneth Perkins, and theft by receiving a stolen vehicle. Bonner appeals, contending that he was denied the effective assistance of counsel and that the trial court erred when it reprimanded his lawyer in the presence of the jury. Upon our review of the records and briefs, we see no error, and we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that early on the morning of August 6, 2004, Perkins and Adams were in the driveway

---

[1] The crimes were committed on August 6, 2004. Bonner was indicted on February 15, 2005, and he was charged with malice murder, two counts of felony murder, aggravated assault, and theft by receiving. His trial commenced on November 7, 2005, and the jury returned its verdict on November 10, 2005, finding him not guilty of malice murder and guilty on all other counts. Bonner was sentenced to a term of imprisonment for life for felony murder and consecutive terms of imprisonment for ten years each for aggravated assault and theft by receiving. Because only one of the victims was killed, the verdict as to felony murder predicated on attempted robbery merged into the felony murder predicated on the aggravated assault of Adams. See Rhodes v. State, 279 Ga. 587, 589 (2) (619 SE2d 659) (2005). Bonner timely filed a motion for new trial on December 9, 2005, and he amended it on October 19, 2012. The trial court denied the motion on April 30, 2013. Bonner timely filed a notice of appeal to the Court of Appeals on May 30, 2013, and the case was transferred to this Court on September 3, 2013, where it was docketed for the January 2014 term and argued on January 6, 2014.

of Perkins's home in Macon when they were approached by three men with guns, one of whom was Bonner. The men demanded money, one of the men pistol-whipped and shot Perkins, and Bonner fatally shot Adams in the neck. Perkins saw the men get into a white Chevrolet Monte Carlo, which had been stolen just a few hours earlier. The crime scene included several 9 mm shell casings and .38 caliber bullet fragments. That evening, Bonner was seen with the Monte Carlo and sold it to be stripped for its parts.

A few weeks later, a long-time acquaintance of Bonner told police that he had seen Bonner driving the Monte Carlo around the date of the murder with two passengers, that Bonner said he was about to sell the vehicle because he had "just burnt that cracker off Rocky Creek[,]"[2] that Bonner had a .38, and that one of the other men in the Monte Carlo had a 9 mm. This same acquaintance also told police that Bonner had later confided in him that someone had "told the police that [he] killed two crackers, but they don't got the gun [so] I'm straight." At trial, the acquaintance testified that none of the statements that he reported to the police was true — other than that he had once seen Bonner with a .38 — and that the police

---

[2] Later testimony indicated that Rocky Creek Road was a major road near the smaller road on which the crimes were committed.

"put words in [his] mouth." But the police officer who interviewed the acquaintance testified that he did not provide the acquaintance with any information about the case and that the acquaintance independently came up with the information about the victims, location of the crime scene, weapons used, and the failure of the police to recover those weapons. After the Monte Carlo was recovered, Bonner's fingerprint was lifted from the inside of the driver's window.

When Perkins was released from the hospital, he was shown a photo lineup that included a photograph of Bonner, but Perkins did not recognize anyone depicted in the photos. A few months later, after Bonner had been arrested for the crimes, Perkins was notified that a bond hearing had been scheduled for Bonner. Perkins attended the bond hearing, and before any of the numerous inmates attending the hearing were identified, Perkins recognized Bonner as the man whom he saw shoot Adams. Perkins also identified Bonner at trial.

Bonner does not dispute that the evidence is sufficient to sustain his convictions, but we nevertheless have independently reviewed the record, with an eye toward the legal sufficiency of the evidence. We conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Bonner was guilty of the crimes of which he was

convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Bonner claims that he was denied the effective assistance of counsel and that the trial court, therefore, ought to have granted his motion for new trial. To prevail on a claim of ineffective assistance, Bonner must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Bonner must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Bonner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden, although not impossible to carry, is a heavy one. See

4

Kimmelman, 477 U. S. at 382 (II) (C). We conclude that Bonner has failed to carry his burden.

(a) First, Bonner asserts that his trial lawyer was ineffective because the lawyer failed to object to Perkins's identification of him as the man who shot Adams. According to Bonner, the pretrial identification "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Neil v. Biggers, 409 U. S. 188, 197 (III) (93 SCt 375, 34 LE2d 401) (1972) (citation and punctuation omitted). And, Bonner says, his trial lawyer also should have objected when Perkins identified him during the trial because the in-court identification was tainted by the improper pretrial identification.

The pretrial identification at issue occurred after the State notified Perkins that a bond hearing for Bonner would be held at the Bibb County law enforcement center.[3] Perkins waited outside the courtroom of the facility and was told to enter by a bailiff. He stood with members of Adams's family, "[a]nd they asked me did I recognize anybody." Perkins looked at the 30 to 40 men sitting in the courtroom, including men of the same race, age, and build as Bonner, all of whom were dressed

---

[3] Such notification is required "whenever possible" pursuant to OCGA § 17-17-7 (c).

alike in inmate garb. Unbeknownst to Perkins, Bonner was standing in the front of the courtroom at the time, and Perkins told Adams's family members that he did not recognize anyone sitting in the "benches." The bailiff came up to the group that included Perkins and told them to step out of the courtroom, and as they walked into the hallway, Perkins turned and saw Bonner walk out behind them. Perkins testified that he then recognized Bonner "as the person that . . . I saw under the streetlight and that . . . walked around . . . and shot [Adams]."

We have already held that "the principle expressed in Neil v. Biggers deals with the suggestiveness of an identification procedure used by police and applies only to state action." Sweet v. State, 278 Ga. 320, 322 (1) (602 SE2d 603) (2004) (citations and punctuation omitted). Here, the State action involved in the pretrial identification was limited to compliance with the victim notification statute and allowing a bailiff to instruct Perkins and Adams's family members about when to enter and exit the courtroom. In any event, Bonner was never identified to Perkins, nor did anyone suggest to Perkins which of the many men in and around the courtroom was Bonner. As a result, the pretrial identification in this case was no more suggestive than the identification in Sweet, in which a witness identified the defendant outside the courtroom just prior to a preliminary hearing. Id. Like the

6

witness in <u>Sweet</u>, Perkins was an eyewitness to the crimes and recognized the perpetrator from viewing the shooting. And any issues about Perkins's ability to accurately identify Bonner — especially given that he previously had failed to provide an identification during a photographic lineup — were credibility issues to be determined by the jury. See id. Given that Bonner has not shown that any objection to the pretrial identification or the subsequent in-court identification by Perkins would have been successful, he has not carried his burden to establish ineffective assistance. <u>Hargrove v. State</u>, 291 Ga. 879, 883 (2) (b) (734 SE2d 34) (2012).

(b) Bonner also claims that his trial lawyer was ineffective because he failed to ask for a limiting instruction or mistrial when the prosecuting attorney asked a police officer if Bonner had been "arrested for aggravated assault for shooting someone in March of 2004 . . . [.]"[4] But after this question was posed, Bonner objected before the police officer could provide any response, the jury was excused for its "afternoon break," the trial court instructed the State to "stay away" from the topic of Bonner's prior arrest, and the trial later continued without any testimony

_____

[4] The prosecuting attorney testified that she asked this question because she believed that Bonner had opened the door to character evidence when he asked this same police officer if Bonner previously had been convicted of any felonies.

ever being presented on that topic. And although Bonner's lawyer did not seek a limiting instruction, a reasonable lawyer may not have wanted to draw attention to the question after the jury returned to the courtroom from the afternoon break. In any event, the court later instructed the jury that questions asked by the lawyers were not evidence, so Bonner has failed to show that there is a reasonable probability that his lawyer's response to the improper question contributed to the verdict. See Pearce v. State, 300 Ga. App. 777, 786-787 (7) (a) (686 SE2d 392) (2009) (failure to seek further remedial action following improper comment did not establish ineffective assistance because defendant failed to "show[ ] that a motion for mistrial would have been meritorious . . . or that the remedial actions taken were insufficient") (citing Johnson v. State, 281 Ga. 770, 772 (2) (b) (642 SE2d 827) (2007)).

3. Finally, Bonner asserts that the trial court violated OCGA § 17-8-57 and improperly showed bias against his trial lawyer when it reprimanded the lawyer in front of the jury during his cross-examination of a witness.[5] It is true that judicial

---

[5] The reprimand began outside the presence of the jury, when the trial court scolded the lawyer for repeatedly asking questions about issues that the trial court had "told [him] persistently were not admissible." When the jury returned to the courtroom, the trial court informed the jury that "that last question was improper" and that the court would "take about a half-hour break" so that it could review all of the questions that Bonner's counsel intended

8

comment on the performance of trial counsel may, in extreme cases, contribute to a finding that the trial court has violated OCGA § 17-8-57, thus requiring a reversal of a conviction. See Johnson v. State, 278 Ga. 344, 346-347 (3) (602 SE2d 623) (2004) (reversal required and new trial granted where trial court acted with "undue hostility" toward counsel, told counsel to "sit down and shut up," interposed its own objections to questions posed by counsel, berated counsel for raising legitimate objections, and conducted an ex-parte conversation with the State in which it referred to "our witnesses" and provided suggestions to the State as to how to develop the record). But here, in contrast, the trial court reprimanded Bonner's trial lawyer only after he asked the witness numerous improper questions and questions that were so convoluted that the lawyer admitted he did not understand them himself. The reprimand did not suggest any bias against Bonner or his lawyer or express any opinion about Bonner's guilt, and the court specifically instructed the jury not to consider any rulings or comments made by the trial court as an expression of "any opinion upon the facts of the case or upon the credibility or believability of any witness or upon the evidence, or upon the guilt or innocence of [Bonner]." "It is the duty of the trial court to control the trial of the case and to

_____

to ask the witness "to see if they comply with the law."

9

[e]nsure a fair trial to both sides on the disputed issues in the case. Sometimes this requires interference by the court with the conduct of counsel . . . ." Dyke v. State, 232 Ga. 817, 825 (III) (209 SE2d 166) (1974). Bonner has not shown that the trial court abused its considerable discretion in the manner in which it dealt with his lawyer during the cross-examination of the witness. See Buttram v. State, 280 Ga. 595, 598 (8) (631 SE2d 642) (2006).[6]

Judgment affirmed. All the Justices concur.

_____

_____ Decided March 28, 2014.

Murder. Bibb Superior Court. Before Judge Brown.

Tamika L. Fluker, Debra G. Gomez, for appellant.

K. David Cooke, Jr., District Attorney, Dorothy V. Hull, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General, for appellee.

_____

[6] Bonner also claims that his lawyer should have requested a mistrial following the reprimand instead of merely offering an objection. But any request for a mistrial would have been meritless. Buttram, 280 Ga. at 598 (8).

10