**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 28, 2019**

# In the Court of Appeals of Georgia

A18A2064. THOMPSON v. THE STATE.

MARKLE, Judge.

A jury convicted Ricky Lewis Thompson[1] of one count of sale of a controlled substance. He now appeals, arguing the trial court erred in its denial of his motion for new trial, as amended, because (1) the evidence was insufficient; (2) the trial court made an improper comment on the evidence; and (3) he received ineffective assistance of counsel. For the reasons that follow, we affirm.

When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

---

[1] Although Appellant's name is spelled "Rickey" in his appellate brief, we observe that it is spelled "Ricky" on the warrant, the verdict, the sentencing sheet, and on other documents throughout the record.

So viewed, the record shows that in April 2011, a captain with the Walton County Sheriff's Office narcotics unit opened an investigation into possible drug sales at Thompson's home following citizen complaints about traffic to and from the residence and that pills were being purchased there. During the course of the investigation, officers conducted four trash pulls at Thompson's residence, finding pill bottles, full prescriptions, and doctor's notes. A search of Thompson's residence uncovered a large number of prescription pills.

In July 2011, a sergeant with the Walton County Sheriff's Office, who was involved in the investigation, subsequently encountered Jeremie Moorehead leaving Thompson's residence. Police stopped Moorehead's vehicle and, with Mooreheads's consent, searched the vehicle, finding a green pill bottle containing an Oxycodone pill. Moorehead admitted he was a middleman for Thompson's drug sales and he agreed to serve as a confidential informant in the investigation.

On July 27, 2011, Moorehead assisted police in orchestrating a controlled buy from Thompson. Moorehead arranged to meet Thompson at a gas station to purchase ten pills. This was not the first time Moorehead purchased drugs from Thompson in this manner. Moorehead was fitted with an electronic monitoring device, and the buy was recorded on video and audio and monitored by police. Police gave him the

money to purchase the pills. Moorehead went inside the gas station, but he did not see Thompson; instead, he saw another man he did not know. Moorehead gave this man the money and picked up the Lortab pills "at the usual spot."

At trial, Marcus Lackey testified that, on the same day of the controlled buy, he met Thompson at his home to pick up cash Thompson owed him, but Thompson paid him with Lortab pills instead of cash. He testified that Thompson told him to take the pills and drop them off at the gas station where someone would be waiting to pick them up. Lackey testified that when Moorehead came into the gas station, they exchanged the pills for cash.

Following a trial in April 2013 , the jury convicted Thompson on one count of sale of a controlled substance based on the July 27, 2011 controlled buy.[2] He was sentenced to 10 years to serve in confinement. He filed a motion for new trial, as amended, arguing the evidence was insufficient to convict him of sale of a controlled substance, the trial court improperly commented on the evidence, and that he received ineffective assistance of counsel. The trial court denied the motion. This appeal followed.

---

[2] Thompson was indicted on three counts of sale of a controlled substance and five counts of possession of a controlled substance with intent to distribute.

3

1. Thompson contends there was insufficient evidence to authorize the jury to convict him of sale of a controlled substance because the circumstantial evidence supports the alternate theory that Lackey was guilty of selling pills to Moorehead without Thompson's knowledge or aid. This argument is without merit.

> When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations omitted.) *Lancaster v. State*, 291 Ga. App. 347, 348 (662 SE2d 181) (2008). "Further, to sustain a judgment of conviction based upon circumstantial evidence, the evidence need not exclude every inference or hypothesis except the guilt of the accused, but only reasonable inferences and hypotheses, so as to justify the inference, beyond a reasonable doubt, of guilt." (Citation, punctuation and emphasis omitted.) *Marsengill v. State*, 275 Ga. App. 840, 841 (622 SE2d 58) (2005). "The determination of whether an alternative hypothesis raised by the evidence is reasonable is a job for the factfinder, who is authorized to reject a hypothesis that he considers implausible." (Citation omitted.) Id. at 841. Moreover, the jury decides

whether the evidence excluded every reasonable hypothesis but for the defendant's guilt. Id.

Pursuant to OCGA § 16-13-30 (b), "[i]t is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance."

Here, Moorehead testified he spoke with Thompson and arranged to meet him at the gas station to purchase ten pills. He also testified he bought pills from Thompson at this gas station before. He testified that, when he went inside the gas station, he did not see Thompson. Instead, there was another man there, and he exchanged the money for the drugs with this person. The controlled buy was electronically monitored by a sergeant and recorded on audio and video, confirming that the sale of prescription pills took place.

Additionally, Lackey testified that Thompson arranged for him to exchange the drugs with Moorehead to cover a debt Thompson owed Lackey.

> Although a conviction cannot rest solely on the uncorroborated testimony of an accomplice, corroboration requires only slight evidence from an extraneous source identifying the accused as a participant in the criminal act. Corroborative evidence may be circumstantial and based on the testimony of other accomplices. And it does not have to be sufficient to warrant a conviction. Rather, the corroboration, which may

5

include the defendant's conduct before and after the crime, need only connect and identify the defendant with the crime.

(Citations, punctuation, and footnotes omitted.) *Clark v. State*, 294 Ga. App. 331, 333 (670 SE2d 131) (2008). Here, Lackey gave a detailed account of the sale, including Thompson's planning and execution of the crime. His testimony is corroborated by the testimony of Moorehead. It is further corroborated by the four trash pulls at Thompson's residence, yielding pill bottles, full prescriptions, and doctor's notes, and the search of Thompson's residence, yielding a large number of prescription pills. Based on the foregoing, there was evidence from which the jury could exclude any reasonable inference or hypothesis but for Thompson's guilt. *Marsengill*, 275 Ga. App. at 841. Accordingly, the evidence was sufficient to support Thompson's conviction. *Lancaster*, 291 Ga. App. at 348.

2. Next, Thompson argues the trial court erred by improperly commenting on the evidence three separate times during trial. However, before addressing the alleged error, we must first determine our standard of review.

Under current OCGA § 17-8-57, "[i]t is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused."

6

OCGA § 17-8-57 (a) (1). The Supreme Court of Georgia recently held that OCGA § 17-8-57 applies to cases appealed after July 1, 2015. See *Willis v. State*, 304 Ga. 122, 129 (2) (816 SE2d 656) (2018).

Thompson argues he should not be bound by the Supreme Court's recent ruling in *Willis* because this Court should consider the start of his appeal as the date on which he filed his motion for new trial in June 2013. Alternatively, Thompson argues the Court should determine the issue preserved for appeal based on the State's lengthy delay in responding to his motion for new trial, constituting a 1,312 day delay in the appeals process.

> Prior to July 1, 2015, OCGA § 17-8-57 provided in its entirety:

> It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

> In the current statute, certain language from the prior version is omitted and a subsection that alters the standard of review is added:

7

(a)(1) It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.

(2) Any party who alleges a violation of paragraph (1) of this subsection shall make a timely objection and inform the court of the specific objection and the grounds for such objection, outside of the jury's hearing and presence. After such objection has been made, and if it is sustained, it shall be the duty of the court to give a curative instruction to the jury or declare a mistrial, if appropriate.

(b) Except as provided in subsection (c) of this Code section, failure to make a timely objection to an alleged violation of paragraph (1) of subsection (a) of this Code section shall preclude appellate review, unless such violation constitutes plain error which affects substantive rights of the parties. Plain error may be considered on appeal even when a timely objection informing the court of the specific objection was not made, so long as such error affects substantive rights of the parties.

OCGA § 17-8-57 (a)-(b). In *Willis*, the Supreme Court of Georgia held "the standard of appellate review set out in subsection (b) is properly given retroactive effect to cases tried before the enactment date but appealed after that date." (Citation omitted.) *Willis*, 304 Ga. at 129 (2) (b).

Here, Thompson's trial counsel failed to object to any of the trial court's statements. Because Thompson filed his appeal in June 2018 , the current version of OCGA § 17-8-57 applies. We therefore review Thompson's claim for plain error. *Willis*, 304 Ga. at 129 (2) (b); see also *Felton v. State*, 304 Ga. 565, 572 (2) (c) (819 SE2d 461) (2018).

> To establish plain error, Thompson must show the following:
>
> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation omitted.) *Felton v. State*, 304 Ga. 565, 572 (2) (c) (819 SE2d 461) (2018). With this standard in mind, we turn to Thompson's allegations of error.

(a) Thompson argues the trial court improperly commented on the evidence when it told the jury the State needed time to prepare its witness. "It is the duty of the

9

trial court to control the trial of the case and to ensure a fair trial to both sides on the disputed issues in the case. Sometimes this requires interference by the court with the conduct of counsel." (Citation and punctuation omitted.) *Bonner v. State*, 295 Ga. 10, 15 (3) (757 SE2d 118) (2014).

At the beginning of the State's direct examination of this witness, the trial court decided to dismiss the jury for the evening so that the State could prepare the witness for the questions to be asked during the examination. Prior to dismissing the jury, the trial court stated:

> I am tired of us wasting our time because these witnesses have not been talked to and prepared and spend all this time out here with me having to send you back to let the witness read whatever they have to read or talk with whoever they are going to talk to, so don't discuss this case with each other or anybody else or allow anybody to discuss it with you.

Thompson argues that, by telling the jury the State needed to speak to and prepare the witness for questioning, the trial court called into question the witness's testimony and impeached his credibility. This argument is without merit.

A review of the witness's testimony prior to the break reveals he only answered certain preliminary questions, such as providing his name, where he lived, and whether he knew Thompson. No substantive testimony had yet been provided. The

10

trial court's statement that it was taking a recess to provide the State an opportunity to talk with the witness was an exercise of its discretion to control the trial proceedings, and was not an expression of the court's opinion as to the credibility of the witness. Also, the trial court specifically instructed the jury not to consider any rulings or comments it made as an expression of any opinion on the facts of the case or upon the credibility or believability of any witness or the evidence, or upon the guilt or innocence of Thompson. See *Bonner*, 295 Ga. at 15 (3). More importantly, the witness's entire testimony centered around the charges for which Thompson was ultimately acquitted. Accordingly, the outcome of the trial was not affected by the trial court's comments in this instance, and we find no error.

(b) Thompson's second allegation of improper comment by the trial court involves the testimony of the officer. During cross-examination, defense counsel repeatedly asked the officer whether he had personally witnessed the alleged sale between Thompson and Moorehead at Thompson's home in July 2011. After defense counsel's repeated attempts to solicit an answer, the following colloquy occurred:

> COURT: Counselor, you keep asking and asking the same question over and over again. He has already testified that he did not see the buy, so let's go on to something else.

COUNSEL: Respectfully, you Honor, he didn't answer the way you just answered. What he said was he saw a buy –

COURT: If I turn to the jury and ask them is that the implication they got, I am sure they will nod their head yes. Let's use common sense out here and go straight to things. Don't keep on parsing it out so finely and having him say the same thing two or three different ways. He said exactly what he did that time.

[COURT] Do y'all understand what his function was on this time we are talking about? The jurors – let the record reflect they are shaking their head yes. Thompson argues the trial court's statements improperly commented on the officer's credibility. We disagree.

"[R]emarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence." *Johnson v. State*, 246 Ga. 126, 128 (V) (269 SE2d 18) (1980). Here, the overall import of the trial court's comments was to explain to counsel why he had exhausted a particular line of questioning and why the court was directing him to move on to a different topic. There was nothing improper in the court's statements.

Thompson's reliance on *Williams v. State*, 329 Ga. App. 706, 712 (2) (a) (766 SE2d 474) (2014) (physical precedent only) is unavailing. In that case, the trial court explicitly commented on the witness's credibility and testimony. Here, in contrast, the

trial court posed no question regarding the witness's truthfulness, and therefore, made no remarks as to his credibility. Moreover, the officer's testimony in this regard involved an alleged drug sale for which the jury did not find Thompson guilty. As such, the outcome of the trial was not affected by the trial court's comments as to this portion of the officer's testimony.

(c) The third instance in which Thompson argues the trial court improperly commented on the evidence concerns the sergeant's testimony. During cross-examination, defense counsel asked about the number of officers involved. The State objected to the question on relevancy grounds. and defense counsel responded that he was "setting a scene." The following colloquy then occurred:

> COUNSEL: They talked about my client's hands going up. This young man testified that he thought my client threw something.[3] I am trying to set the scene in which this happened –
> COURT: He didn't say he thought he threw something. He said he saw him throw something.
> COUNSEL: That's what I want to get to. I am setting the scene so that the jury can have the full facts –
> COURT: I sustain the objection, because I haven't been told the relevance of it.

---

[3] The sergeant testified earlier that "I observed [Thompson] throw something from the other hand in toward the driver . . ." .

Thompson argues that, in making this comment, the court expressed its opinion as to the credibility of the testimony. Again, this argument is baseless.

"[A] trial judge may state his recollection as to some portion of the testimony without prejudice to the defendant." (Citation omitted.) *Smith v. State*, 317 Ga. App. 801, 805 (2) (732 SE2d 840) (2012). Here, the trial court's comments did not express an improper opinion on the evidence. They were meant to clarify prior testimony that the sergeant actually saw Thompson throw something and not that he thought he saw him throw something, as suggested by defense counsel. Moreover, this specific testimony related to a charge for which Thompson was not convicted, and therefore, it is doubtful that the outcome of the trial was affected by the trial court's comments.

Hence, Thompson has failed to show that any of the trial court's comments constitute plain error requiring us to reverse his conviction.

3. Finally, Thompson argues he was denied effective assistance of counsel because his counsel failed to object to two alleged improper comments the State made during closing argument.

"To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668, (104 SCt 2052, 80 LEd2d 674) (1984), an appellant must show both that counsel's performance was deficient and that the deficient

14

performance prejudiced the defense. If an appellant fails to meet either prong of the *Strickland* test, it is not incumbent upon this Court to examine the other prong." (Citations and punctuation omitted.) *Green v. State*, 291 Ga. 579, 580 (2) (731 SE2d 359) (2012).

Here, Thompson argues there were two instances where the State made improper comments during closing argument. The first comment was: "You never know how a drug deal is going to go down, and you certainly never know– imagine you are the person with the drugs, or with the money, if the dealer figures out you are working for the sheriff's office or the police. Game over." The second instance is where the State said:

> "So what do you tell the mothers and fathers? What do you tell all those other family members who have lost people, lost their families, lost their friends to addictions to pills? Do you tell them, nah, what are we going to do? The man is trying to make money. Or do you sit here right now and say, our sheriff's office cared enough to investigate what was going on. . . . You are not going to let other people fall prey because you want to get rich."

As to both instances, Thompson argues defense counsel failed to object to these comments, and allowed the State to imply that he would continue to sell drugs if not found guilty. Thompson further argues this Court has held that such "future

dangerousness" arguments made during a prosecutor's closing argument without objection can result in a finding of ineffective assistance of counsel.

However, there was no hearing held on the motion for new trial in the court below, as the parties agreed to submit the issue to the court on briefs without a hearing. The failure to request or conduct an evidentiary hearing at the motion for new trial renders this court unable to determine whether trial counsel's failure to object to the State's comments constituted deficient performance or trial strategy. See *Brewer v. Hall*, 278 Ga 511, 512 (1) (603 SE2d 244) (2004). Without the testimony of trial counsel regarding the decision not to object to such comments, counsel's decision is presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim. See *Mitchell v. State*, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012). Thus, Thompson has failed to show deficient performance.

For all these reasons, we conclude that the evidence was sufficient to support the jury's verdict, the trial court did not improperly comment on the evidence, and Thompson has not shown deficient performance to support his claim for ineffective assistance of counsel. Accordingly, we affirm the trial court's denial of the amended motion for new trial.

*Judgment affirmed. McFadden, P. J., and Rickman, J., concur.*

16