S13A0738. BAKER v. THE STATE.
(750 SE2d 137)

NAHMIAS, Justice.

Appellant Raymond S. Baker[1] was convicted of malice murder and numerous other crimes in connection with two home invasions. On appeal, he contends that the trial court erred by denying him a thorough and sifting cross-examination of a key witness and that his trial counsel provided constitutionally ineffective assistance. These contentions have no merit, so we affirm.[2]

---

[1] The case is docketed here using this name. The indictment called Appellant "Raymone," and he is also sometimes referred to in the record as "Raymon."

[2] The crimes occurred on April 8, 2007. On October 21, 2008, a Muscogee County grand jury returned a 66-count indictment against Appellant and six other defendants. Appellant was tried separately from November 12-17, 2008, and the jury found him guilty of two counts of malice murder, two counts of felony murder, six counts of armed robbery, four counts of attempted armed robbery, two counts of burglary, nine counts of aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. The felony murder convictions were vacated by operation of law. The trial court sentenced Appellant to

1. Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. Around 10:40 on the night of April 8, 2007, four masked men came through the back door of Guillermo Vasquez's apartment in Columbus, Georgia. One of the men was armed with a rifle; another had a pistol; and the other two carried metal pipes. The intruders forced the nine people in the apartment into the living room and took cash, phones, and gold chains from them. The victims were pistol-whipped and hit with a pipe, and at one point the man with the rifle got angry and shot at least one bullet into the wall. Investigators later recovered a 7.62 x 39 mm shell casing from the Vasquez apartment.

At about 11:15 on the same night, someone knocked on the door of Eimar Bartolon's trailer, which was not far from the Vasquez apartment. When Eimar opened the door, three masked men forced their way inside. One of the intruders pointed a rifle at Eimar; when Eimar grabbed at the gun, it discharged, and he stopped fighting. The other two intruders carried metal pipes, and they began beating Eimar and his relatives, who then tried to resist the assault. Rudibel Bartolon fought with one of the intruders until a fourth man, who was armed with a .22-caliber pistol, came inside and hit Rudibel. The intruder with the rifle forced Eimar's cousin and Eimar's teenage brother, Isaias Bartolon, into the bathroom while Eimar wrestled one of the pipe-wielding intruders outside onto the front porch.

Eimar's neighbor, Marcelo Rivera, heard the commotion and rushed over to the trailer. Eimar then noticed another man in front of the trailer, who began shooting at Eimar with a handgun until Eimar took cover. After the intruders left, Eimar found Rivera lying in the street, shot in the waist and back; Rivera died from two gunshot wounds, which were caused by two .22-caliber bullets found in his body. Inside the trailer, Eimar found Isaias on the floor, dead from a contact gunshot wound to the head.

At the Bartolon trailer, investigators found one .22-caliber shell casing inside and another on the driveway, and they also collected a

consecutive terms of life in prison on the two malice murder convictions and one of the armed robbery convictions; concurrent terms of life in prison for the other five armed robbery convictions; concurrent ten-year terms for the four attempted armed robbery convictions; concurrent 20-year terms for the two burglary convictions and the nine aggravated assault convictions; and a consecutive five-year term for the firearm conviction. On December 2, 2008, Appellant filed a motion for new trial, which he amended on July 20, 2011 with the assistance of new counsel. After holding an evidentiary hearing on May 8, 2012, the trial court denied the new trial motion on July 19, 2012. Appellant filed a notice of appeal directed to the Court of Appeals, which granted his motion to transfer the case to this Court on January 3, 2013. The case was then docketed in this Court for the April 2013 term and submitted for decision on the briefs.

7.62 x 39 mm shell casing and a metal pipe from the living room. The 7.62 x 39 mm shell casings found at the Vasquez and Bartolon crime scenes were fired by the same gun, a Norinco SKS rifle later found at the home of Appellant's co-indictee Jessie Willis. A dark knit cap worn by one of the intruders was also found on the Bartolon porch; DNA testing showed that one of the two profiles of DNA located on the cap matched Appellant.[3]

After Appellant was arrested, he waived his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), and gave a statement to the police. Appellant admitted that co-indictees Willis, Cassinova Houston ("Houston"), and Thomas Houston had asked him to help "hit a lick" (commit an armed robbery), although he claimed to have acted only as the getaway driver for the Vasquez and Bartolon home invasions and said that his co-indictees were armed with the .22-caliber pistol and SKS rifle. At trial, Appellant's statement was presented to the jury, and the State also presented evidence of his prior conviction for armed robbery of a grocery store as a similar transaction. Houston was called as a witness for both the State and the defense.[4] He identified Appellant as the rifleman in both home invasions, Willis as the pipe-wielding intruder who struggled with Eimar on the porch, himself as the intruder who fought Rudibel, and his brother Thomas as the assailant with the .22-caliber pistol who fatally shot Isaias in the trailer and also fired two shots outside where Rivera was killed.

When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted and sentenced. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (parties to a crime); *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Appellant contends that his right to cross-examine Cassinova Houston was frustrated because his trial counsel was interrupted repeatedly by the prosecution and the trial court. A criminal defendant has the right under the Sixth Amendment to cross-examine witnesses who testify against him. See *State v. Vogleson*, 275 Ga. 637,

---

[3] The other profile came from an unknown person.

[4] Before trial, Houston pled guilty to ten counts of armed robbery, 18 counts of aggravated assault, nine counts of attempted armed robbery, three counts of burglary, and two counts of voluntary manslaughter; the State agreed to recommend a sentence of 30 years in prison conditioned upon his truthful testimony at Appellant's trial.

638 (571 SE2d 752) (2002). And at the time of Appellant's trial, Georgia statutory law provided that "[t]he right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him." Former OCGA § 24-9-64.[5] However, "the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court, so long as the court does not cut off all inquiry on a subject on which the defense is entitled to reasonable cross-examination." *Hampton v. State*, 289 Ga. 621, 626 (713 SE2d 851) (2011) (citation and punctuation omitted).

In this case, the record shows that the trial court allowed Appellant considerable leeway to question Houston on cross-examination, and Appellant also called Houston as a witness in the defense case, where he was asked a substantial number of additional questions. There was one point during cross-examination when Appellant's counsel asked Houston about a statement that he had made and the prosecutor interrupted to ask which statement counsel was referring to; the trial court then asked Appellant's counsel to clarify if the question related to Houston's statement to the police or his testimony on direct examination. When counsel complained about the interruptions, the court told him that he could question the witness "all day" if he wished. In a further colloquy outside the presence of the jury, the court explained that counsel needed to pose clear questions so as not to confuse the witness and the jury but added, "You can ask [the witness] all night long, but be clear with your question." It is apparent from the record that the trial court did not abuse its discretion to regulate cross-examination, and Appellant's right of confrontation was not violated. See *Moon v. State*, 288 Ga. 508, 511 (705 SE2d 649) (2011) ("A trial court does not abuse its discretion in preventing questions . . . that could confuse or mislead the jury." (citations and punctuation omitted)).

3. Appellant also contends that his trial counsel provided constitutionally ineffective assistance. To prevail on this claim, Appellant was required to

> show that his trial counsel provided deficient performance and that, but for that unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. In examining an effectiveness

---

[5] Appellant was tried in 2008 under Georgia's old Evidence Code. The new Evidence Code, which applies to trials after January 1, 2013, see Ga. L. 2011, p. 99, § 101, similarly says that "[a] witness may be cross-examined on any matter relevant to any issue in the proceeding. The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against the party. . . ." OCGA § 24-6-611 (b).

claim, a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."

*Watkins v. State*, 289 Ga. 359, 362 (711 SE2d 655) (2011) (quoting *Strickland v. Washington*, 466 U. S. 668, 697 (104 SCt 2052, 80 LE2d 674) (1984)).

Appellant maintains that his trial counsel performed deficiently in failing to properly cross-examine Cassinova Houston and a detective and in telling the jury that Appellant was in jail. To show prejudice from these alleged deficiencies, however, Appellant was "required to offer more than mere speculation that, absent the counsel's alleged errors, a different result probably would have occurred at trial." *Zamora v. State*, 291 Ga. 512, 516 (731 SE2d 658) (2012) (citation and punctuation omitted). Appellant has not specified what more his trial counsel should have done with Houston or the detective on cross-examination, much less what specific information additional cross-examination would have produced that probably would have made a difference in the outcome of the trial. Nor can we say that trial counsel's indication during his opening statement that Appellant was in jail caused prejudice.[6] The jury heard evidence that Appellant had been arrested for these crimes and that he had a prior armed robbery conviction, so the jury's verdict was unlikely to be changed simply by counsel's passing mention of Appellant and the jail during opening statements, which the trial court instructed the jury were not to be considered as evidence. Thus, pretermitting the issue of deficient performance, Appellant failed to show any resulting prejudice, and his ineffective assistance of trial counsel claim fails.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 21, 2013.

*Rowe & Rowe, Anton L. Rowe*, for appellant.

---

[6] In his opening statement, trial counsel said, "That's his name, Raymon. At the jail, they've got him as Raymond with a d." See footnote 1 above.

*Julia Fessenden Slater, District Attorney, Robert W. Smith, Jr.,
Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith,
Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General*, for appellee.