309 Ga. 799
FINAL COPY

S20A0941.  BARTON-SMITH v. THE STATE.

BLACKWELL, Justice.

Khaleil Barton-Smith was tried by a Rockdale County jury and convicted of murder and other crimes in connection with the fatal shooting of Alexander Hunter. Barton-Smith appeals, contending that the trial court erred when it denied his request to charge the jury on voluntary manslaughter as a lesser offense and when it interrupted his lawyer's cross-examination of a witness. Finding no reversible error, we affirm.[1]

---

[1] Hunter was killed on May 25, 2014. In October 2014, a grand jury indicted Barton-Smith, charging him with murder with malice aforethought, murder in the commission of a felony (with all three non-murder charges listed as predicate felonies), armed robbery, aggravated assault, and possession of a firearm during the commission of a crime. Barton-Smith was tried in October 2016, and the jury found him guilty on all counts. The trial court sentenced him to imprisonment for life without the possibility of parole for malice murder, a consecutive term of imprisonment for life for armed robbery, and a consecutive term of imprisonment for five years for possession of a firearm during the commission of a crime. The other counts merged or were vacated by operation of law. Barton-Smith timely filed a motion for new trial in November 2016, and he amended the motion in October 2019. After a hearing, the trial court denied his motion for new trial in November 2019. Barton-Smith timely

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows the following. On May 25, 2014, Myles Lance was spending time with several friends, including Hunter, and Lance expressed a desire to purchase a used gun. Hunter told Lance that Chris Evans — whom Hunter had known since fourth grade — might know someone who had a gun for sale. Lance and Hunter contacted Evans by phone to ask about purchasing a gun, and later that evening, Evans instructed them to meet at a particular location to conduct the transaction. Lance and Hunter attempted to find that location, and as Lance drove and looked for the location, Hunter was trying to get directions by phone.

Eventually, Lance and Hunter drove into a subdivision and picked up Barton-Smith, who directed them to the "very back of the neighborhood." Lance pulled up near two townhouses, and the three men exited the car. Lance gave Hunter $250 for the gun, including two $100 bills. Hunter then instructed Lance to wait in the car while

---

filed a notice of appeal, and his case was docketed to the April 2020 term of this Court and submitted for a decision on the briefs.

Hunter went with Barton-Smith toward the back of the two townhouses to talk. Lance testified that Hunter and Barton-Smith talked for about ten to fifteen minutes, after which Hunter came back to the car and told Lance that the gun Lance originally wanted to buy was not available anymore. Hunter said, however, that a different gun was available for $350. Lance told Hunter that he only had $250 and that he would pay the other $100 later.

According to Lance, Hunter went back between the houses and continued talking with Barton-Smith. Lance then heard a gunshot and saw Hunter scream and fall. Lance also saw Barton-Smith coming toward the car. He became scared and drove a short distance down the street, but then he drove back, looking for Hunter. Lance eventually found Hunter on the ground, bleeding, and asked a bystander to call 911. A police officer who arrived on the scene determined that Hunter was dead. Crime scene investigators did not find any money on Hunter's person. An autopsy revealed that Hunter died from a single gunshot wound; the bullet entered his back just below the left shoulder and punctured his heart, causing

massive blood loss. The bullet was recovered from Hunter's body and sent to the Georgia Bureau of Investigation.

Amin Butler testified that, on the day of the incident, he attended a cookout at which Evans was present. According to Butler, Barton-Smith came to the cookout and then left "for a while." After Barton-Smith came back, Butler heard Barton-Smith tell Evans that Barton-Smith "shot him" and that he did it "for money." After the cookout — early on the morning of May 26 — Butler gave a ride home to Barton-Smith and Evans, and on the way, they asked Butler to stop at a QuikTrip gas station. Butler saw Barton-Smith with a $100 bill. A witness who was working at that gas station at the time testified that Evans and Barton-Smith came inside and each used a $100 bill to purchase some items.

After the visit to the QuikTrip, Evans and Barton-Smith spent the night at the house of a friend, Tera Brown. In the morning, Brown saw Evans and Barton-Smith cleaning a Taurus .357 Magnum revolver. Brown testified that the two men then took the gun outside the house and did not bring it back inside. Investigators

later found this gun behind Brown's residence, and a firearm expert determined that the bullet recovered from Hunter's body was fired from that gun.

Barton-Smith was arrested the day after the shooting and taken to the sheriff's office, where he was interviewed twice after he was read the Miranda[2] warnings. During these interviews, Barton-Smith admitted that he shot Hunter, though he gave differing accounts of how the shooting occurred. In one of the interviews, Barton-Smith told the interviewing officer that he was negotiating the sale of the gun with Hunter, and when it seemed that Hunter would not be purchasing the gun, Hunter crouched down and "whistled out to his friend." Barton-Smith said he heard a car door open and a person walking and thought "something was up" and that's "when I ended up just shooting him." Barton-Smith said he thought Lance had a gun, but he admitted that he did not see a gun

---

[2] Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

on Lance. Barton-Smith explained to the officer that he shot Hunter because he thought he himself would get shot or "something else."

Barton-Smith does not dispute that the trial evidence, as summarized above, is sufficient to sustain his convictions. But consistent with our usual practice in murder cases, we independently have reviewed the record to assess the legal sufficiency of the evidence.[3] We conclude that the evidence presented at trial, when viewed in the light most favorable to the verdict, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Barton-Smith was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Barton-Smith contends that the trial court erred when it denied his request to charge the jury on voluntary manslaughter as

---

[3] We remind litigants that, beginning with cases docketed to the term of this Court that begins in December 2020, we will end our practice of considering sufficiency sua sponte in non-death penalty cases. See Davenport v. State, 309 Ga. 385, 399 (846 SE2d 83) (2020). This Court began assigning cases to the December term on August 3, 2020.

a lesser offense. A person commits voluntary manslaughter when he causes the death of another "under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]" OCGA § 16-5-2 (a). "A jury charge on voluntary manslaughter is required only when there is some evidence that the defendant acted in this manner." Ware v. State, 303 Ga. 847, 850 (III) (815 SE2d 837) (2018) (citation and punctuation omitted). "[I]t is a question of law for the courts to determine whether the defendant presented any evidence of sufficient provocation to excite the passions of a reasonable person." Id. (citation and punctuation omitted).

As an evidentiary basis for a charge on voluntary manslaughter, Barton-Smith points to his own statements to the police, in which he said that he believed Lance was armed, that he heard the car door open and saw Hunter crouch down and "whistle[ ] out," and that he believed he was being set up. At most, however, this evidence shows that Barton-Smith shot Hunter out of fear for

his own life, and without more, such fear is not sufficient to warrant a charge of voluntary manslaughter. See Harris v. State, 299 Ga. 642, 644 (2) (791 SE2d 32) (2016) ("[N]either fear that someone is going to pull a gun nor fighting is sufficient alone to require a charge on voluntary manslaughter." (citation and punctuation omitted)); Blake v. State, 292 Ga. 516, 518 (3) (739 SE2d 319) (2013) (although the defendant testified that he believed the victim "was drawing a gun and that he was intimidated by the presence of [the victim's] three friends, whom he suspected might also be armed, there is no evidence that this fear, whether reasonable or not, rose to the level of 'irresistible passion' necessary to support a charge on voluntary manslaughter"). The trial court did not err when it declined to charge the jury on voluntary manslaughter.

3. Barton-Smith also contends that the trial court improperly interrupted his lawyer's cross-examination of Lance about Lance's prior statements to the police. The evidence shows that, after the shooting, Lance was interviewed multiple times by different police officers, both at the scene of the crime and at the police station. On

direct examination, Lance admitted that he initially lied to the police about the reason he and Hunter were in the area in which the shooting occurred. On cross-examination, when Barton-Smith's lawyer began questioning Lance about his prior statements to the police, the trial court interjected as follows:

> DEFENSE COUNSEL: Do you recall telling Deputy Royston that you dropped Mr. Lance off in the subdivision to pick up a friend and then you left and came back to pick up Mr. Lance and that friend?
> LANCE: I am Mr. Lance.
> DEFENSE COUNSEL: I'm sorry.
> COURT: *You can ask him if he remembers something he said in a statement, you can let him look at it.*
> DEFENSE COUNSEL: This is not —
> COURT: Okay, all right.
> DEFENSE COUNSEL: Do you recall telling Deputy Royston that you and Mr. Hunter went to the subdivision, you dropped off Mr. Hunter and then you came back to pick up Mr. Hunter and the friend?
> LANCE: No.

(Emphasis supplied.) After this exchange, the cross-examination continued for some time. When Lance denied that he made a certain statement to another police officer (a statement that actually appeared to be consistent with his direct testimony), the trial court again interjected, telling the defense counsel:

I'm going to ask you this again. . . . If you're asking him questions he supposedly told somebody, he needs the right to refresh his recollection before you cross him is my understanding. Now you keep asking him questions and I think you need to show him that. Did you say this? Did you say this, yes or no?[4]

The trial court then excused the jury, and a discussion ensued between the court and parties about whether Lance had a right to review his prior statements before being cross-examined about them. This discussion ended when the court adjourned the trial proceedings for the day, and it continued the following morning, before the jury entered the courtroom. At the end of this discussion, the trial court told the defense lawyer that she could cross-examine Lance however she wished, as long as the cross-examination was conducted in a fair manner and not by "ambush." The trial court also

---

[4] Barton-Smith claims in passing that this second interjection in the jury's presence "arguably" violated OCGA § 17-8-57 (a) (1), which provides: "It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." This claim is without merit. We see nothing in the court's statement that expresses or intimates an opinion about any fact or about Barton-Smith's guilt. See Bonner v. State, 295 Ga. 10, 15 (3) (757 SE2d 118) (2014) (trial court did not violate OCGA § 17-8-57 (prior version) when it indicated to the jury that the defense lawyer's questions on cross-examination were improper).

requested that the defense lawyer identify which particular police interview she was talking about when asking Lance about his prior statements. The defense lawyer then continued her cross-examination, questioning Lance extensively about his prior statements to the police.

Barton-Smith's main argument in this regard is that the trial court's interruptions, as described above, interfered with his Sixth Amendment right to confrontation and his statutory right to a "thorough and sifting" cross-examination. See OCGA § 24-6-611 (b) ("The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against the party."). We disagree. Although a defendant is guaranteed an "*opportunity* for effective cross-examination," State v. Burns, 306 Ga. 117, 121 (2) (829 SE2d 367) (2019) (citation and punctuation omitted; emphasis in original), the trial court retains considerable discretion to regulate the manner and scope of the cross-examination. See Sanders v. State, 290 Ga. 445, 446 (2) (721 SE2d 834) (2012) ("The Sixth Amendment right of confrontation is not absolute, and trial

courts retain broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion, repetition, or irrelevant evidence."). See also OCGA § 24-6-611 (a) (the trial court "shall exercise reasonable control over the mode and order of interrogating witnesses," in part to "[m]ake the interrogation . . . effective for the ascertainment of the truth[,]" and to "[p]rotect witnesses from harassment or undue embarrassment").

Here, we view the trial court's interjections as attempts to prevent Lance from being confused by his inability to recall which statement he made to which officer, given that he had given multiple statements to multiple officers more than two years before the trial. These interjections did not hinder Barton-Smith's attempts to test Lance's credibility. As such, the trial court's interjections do not amount to an abuse of discretion. See Baker v. State, 293 Ga. 811, 814 (2) (750 SE2d 137) (2013) (trial court did not abuse its discretion when, during defense counsel's cross-examination of a witness, the court asked counsel to clarify his question to the witness and "to pose clear questions so as not to confuse the witness").

Barton-Smith argues that the trial court's interjections were unwarranted because they were not consistent with OCGA § 24-6-613 (a).[5] But even if the trial court was mistaken when it suggested that Lance had a right to have his prior statements shown to him, this misimpression was harmless.[6] After discussing the issue with the parties outside the jury's presence, the trial court made no definitive ruling in this regard — the court did not actually require defense counsel to show Lance his prior statements. The trial court simply ruled — a ruling well within its discretion — that the cross-examination needed to proceed in a fair manner and that, when

---

[5] That statute provides: "In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time. . . ." OCGA § 24-6-613 (a).

[6] To show that a nonconstitutional error was harmless, the State must demonstrate "that it was highly probable that the error did not contribute to the verdict." Bozzie v. State, 302 Ga. 704, 708 (2) (a) (808 SE2d 671) (2017). There is some disagreement among the parties on appeal as to whether Barton-Smith has preserved his objection below and whether we should review his claims only for "plain error." We need not decide this issue, however, because any error here is harmless under either standard of review. See id. ("The test for nonconstitutional harmless error is similar to the determination of prejudice under plain error review, with the principal difference being the party that bears the burden of proof. . . . In both circumstances, we review whether the error prejudiced the outcome of the trial.").

questioning Lance about his prior statements to the police, counsel should identify the particular police interview to which she was referring. Subject to these reasonable parameters, see Baker, 293 Ga. at 814 (2), the trial court imposed no restrictions on the scope of Barton-Smith's cross-examination, telling his lawyer that she could cross-examine Lance "until the cows come home." Indeed, Barton-Smith does not identify any question or information that his lawyer was precluded from asking or eliciting as a result of the trial court's ruling.

Barton-Smith asserts that he was prejudiced by the trial court's interruptions because, after the trial proceedings ended for the day, Lance had a chance to review the videotape of his police interview, the prosecution had additional time to prepare him for cross-examination, and as a result, Lance appeared more confident in his testimony the following day and exhibited a greater recollection of events. To the extent this is a cognizable harm

susceptible of a remedy on appeal,[7] it was not caused by any error of the trial court, but instead, it simply was a consequence of the trial court's decision to adjourn proceedings for the day. And nothing suggests that the court abused its discretion in doing so. See Spencer v. State, 260 Ga. 640, 647 (9) (398 SE2d 179) (1990) ("A trial court retains the discretion to determine how late to hold court before recessing for the evening."). See also Watkins v. State, 278 Ga. 414, 415 (2) (603 SE2d 222) (2004) (a trial court is vested with "broad discretion" in the conduct of trials). For the foregoing reasons, we discern no reversible error in the proceedings below, and we affirm.

Judgment affirmed. All the Justices concur.

---

[7] We note that the ultimate "purpose of a trial is to develop and elucidate the truth," Johnson v. State, 164 Ga. 47, 48 (137 SE 553) (1927), and cross-examination is meant to serve that goal. See Ellington v. State, 292 Ga. 109, 124 (7) (b) (735 SE2d 736) (2012) ("[C]ross-examination is the engine of truth in our justice system. . . ."), disapproved on other grounds by Willis v. State, 304 Ga. 686 (820 SE2d 640) (2018).

Decided September 8, 2020.

Murder. Rockdale Superior Court. Before Judge Irwin.

*Nation, Moore & Associates, Michael B. Nation*, for appellant.

*Richard R. Read, District Attorney, Alicia C. Gant, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.