**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 30, 2025**

# In the Court of Appeals of Georgia

A25A1413. TRAUGHBER v. THE STATE.

PIPKIN, Judge.

Appellant Allan Traughber challenges his 2023 convictions for child rape, incest, and other crimes against his 7-year-old daughter G. T. and his developmentally delayed 17-year-old niece T. T. Appellant contends that the evidence was statutorily insufficient to support his conviction for incest against T. T. under OCGA § 24-8-823 due to the lack of evidence corroborating his confession and that he was denied the effective assistance of counsel due to his trial counsel's failure to conduct a thorough and sifting cross-examination of the State's witnesses. As explained below, Appellant's out-of-court confession that he committed incest against T. T. was sufficiently corroborated by other evidence presented at trial, and he has failed to

show either deficient performance or resulting prejudice from his counsel's strategic and tactical decisions regarding whether and how to cross-examine the State's witnesses. Accordingly, we affirm.

1. Appellant does not challenge the sufficiency of the evidence to support his convictions for child rape, aggravated child molestation, aggravated sexual battery, and incest against his daughter G. T. He also does not challenge the sufficiency of the evidence to support his conviction for incest against his niece T. T. as a matter of due process. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); OCGA § 16-6-22 (a) (6) ("A person commits the offense of incest when such person engages in sexual intercourse or sodomy, as such term is defined in Code Section 16-6-2 [i.e., oral sex or anal sex], with a person whom he or she knows he or she is related to by blood, by adoption, or by marriage as follows: [u]ncle and niece . . . by virtue of adoption."). Nor does he claim that the court erred in admitting into evidence his video-recorded custodial interview by investigators Jason McCoy and Nicholas Luke of the Toombs County Sheriff's Office in which Appellant confessed to committing incest against his niece T. T. by having sexual intercourse with her when she was 14 years old. Instead, he contends that the evidence at trial was

insufficient to support his conviction for incest against T. T. because the State's case rested solely on his uncorroborated confession. See OCGA § 24-8-823 ("All . . . confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction.")[1]

At trial, Appellant testified that he "never had sex of any sort with [his] niece" and claimed, "The reason I, I originally admitted to sleeping with [T. T.] was because I figured that she'd be the next one on the wagon to file allegations against me considering she didn't like me." Appellant argues that his confession to incest against T. T. in his custodial interview, which was played for the jury at trial, was not corroborated by any other evidence at trial as required by OCGA § 24-8-823 because in her trial testimony, T. T. did not state that Appellant had vaginal sex with her. However, OCGA § 24-8-823 "does not fix the amount of evidence necessary to corroborate a confession but leaves the question of its corroborative sufficiency entirely with the jury." *Gilder v. State*, 219 Ga. 495, 497 (3) (133 SE2d 861) (1963).

---

[1] Georgia's current Evidence Code contains four provisions that directly address confessions by criminal defendants: OCGA § 24-1-104 (c), which prescribes the procedure for admitting confessions ("Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. . . ."), and OCGA §§ 24-8-823, 24-8-824, and 24-8-825, which provide the substantive law governing the admissibility and weight of confessions.

"The amount of evidence necessary to corroborate a confession is left entirely within the province of the jury[,] and corroboration in any material particular satisfies the requirements of the law." *Brown v. State*, 198 Ga. App. 352, 353 (1) (401 SE2d 568) (1991). See also *Boone v. State*, 321 Ga. 820, 826 (917 SE2d 78) (2025) ("When the jury finds that a confession is corroborated, it need not find proof of guilt beyond a reasonable doubt from evidence separate from and wholly independent of the confession, and it instead may consider the confession along with other facts and circumstance independent of and separate from it." (citation and punctuation omitted)); *Baker v. State*, 319 Ga. 456, 460 (1) (902 SE2d 645) (2024).

Appellant's out-of-court confession that he committed incest against T. T. was sufficiently corroborated by the following evidence at trial: G. T., who lived in the same house as Appellant and T. T., testified that Appellant touched G. T.'s "no-no's," meaning her vagina, with "[h]is no-no's," meaning his penis, and that when he does that, it "[h]urts a lot." T. T. testified that she has "bad memories" associated with Appellant, that she "put those memories in . . . [a] black box" in her brain and "lost that key," and that she is "never opening the black box." Courtney Anderson, an attorney appointed as the children's guardian ad litem, testified that "the very first

4

thing that [s]he noticed" when she met T. T. for the first time was that T. T. "would hiss at [Anderson] if [Anderson] called [Appellant's] name." Anderson explained that T. T. would "literally fangs out snarl" where "[y]ou could see her teeth." Anderson also testified that she was "aware of [T. T.'s] victimization as well as [G. T.'s]." Heather Cowart, a licensed professional counselor who conducted a forensic interview of T. T. at the Sunshine House Children's Advocacy Center in Swainsboro in December 2022, testified that T. T. described Appellant as a "jerk and a liar" and talked about Appellant "doing inappropriate things with children in the room." Tonya Harris, the clinical director at Sunshine House, testified that at the time of trial in August 2023, "chronologically [T. T. was] 17 years old, but from a developmental standpoint, . . . [T. T. was] more along the lines of somewhere between like nine and eleven years old." Harris also testified that when she first met T. T. in January 2023, T. T. was "disheveled, appearance unkempt, hair was not clean, clothes were loose and baggy, had somewhat of an odor, [and] needed a bath," and T. T.'s presentation and lack of personal hygiene were consistent with T. T. having been a victim of trauma or sexual assault. Accordingly, this claim lacks merit.

2. Appellant also contends that he was denied the effective assistance of counsel due to his experienced trial counsel's failure to conduct a thorough and sifting cross-examination of the State's witnesses. To prevail on this claim, Appellant was "required to prove both that his counsel's performance was professionally deficient," *Romer v. State*, 293 Ga. 339, 334 (3) (745 SE2d 637) (2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)), and that, "but for [counsel's] unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different," *Baker v. State*, 293 Ga. 811, 814 (3) (750 SE2d 137) (2013) (citing *Strickland*, 466 U.S. at 694 (III) (B)). In examining an ineffectiveness claim, "a court need not 'address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.'" Id. at 815 (3) (quoting *Strickland*, 466 U.S. at 697 (IV)). "[D]ecisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Smith v. State*, 298 Ga. 406, 412 (3) (a) (782 SE2d 269) (2016)

(citation and punctuation omitted). "The scope and content of cross-examination are grounded in trial tactics and strategy and thus will rarely constitute deficient performance . . . ." Id. at 413 (3) (b).

Appellant argues that his trial counsel, Brandi Payne, was professionally deficient in failing to cross-examine five of the State's ten witnesses and failing to properly cross-examine four others. At the motion for new trial hearing, Payne testified that she had been a lawyer for 20 years, had worked for the Middle Judicial Circuit Public Defender's Office for 18 years, and had been the Public Defender for the Middle Judicial Circuit for the last 16 years. She explained that Appellant voluntarily confessed to committing the charged crimes in a statement to law enforcement, so the defense strategy was to emphasize that the State could not rely solely on Appellant's voluntary confession to convict him, that it was up to the jury to determine the credibility of the witnesses, and that it was the State's burden to prove Appellant's guilt beyond a reasonable doubt.

At the motion for new trial hearing, Appellant did not ask Payne a single question about why she chose not to cross-examine T. T., the three State's witnesses who were employed by the Sunshine House Children's Advocacy Center (Cowart,

Harris, and Leila Bragg, a child abuse nurse practitioner who conducted forensic medical examinations on G. T. and T. T.), and April Bradford, the Toombs County Division of Family and Children Services case worker assigned to the family. However, on cross-examination, the State asked Payne why she decided not to cross-examine three of the State's witnesses: T. T. and two of the Sunshine House employees, Cowart and Bragg. Payne testified that she had tried a number of cases involving child victims and child molestation and that they are "extremely hard cases to present to a jury," in part because it is so difficult to get the jury "to leave their feelings and emotions at the door and outside of the jury box." She also testified that "from day one, [Appellant] was saying that he was going to testify at trial."

As to T. T., Payne testified that she was worried that attacking her on cross-examination would alienate the jury and thereby seriously harm the defense. She explained that it was "extremely obvious that [T. T.] had issues, that she was special education, [and] was delayed developmentally, and . . . when [T. T.] saw the Defendant in the courtroom, . . . she hissed at him and immediately got out of his line of sight so that he could not see her." Payne's decision not to cross-examine an obviously developmentally delayed child who had a viscerally negative reaction to her

8

client in order to avoid alienating the jury was a sound strategic decision, not an example of deficient performance. See *Patterson v. State*, 314 Ga. 167, 172 (2) (b) (875 SE2d 771) (2022) (agreeing that "the decision of Appellant's trial counsel 'to take it easy on [the murder victim's wife] because he did not want to be seen as attacking a sympathetic witness' was a strategic decision" that did not constitute deficient performance).

As to the two Sunshine House employees, Cowart and Bragg, Payne testified that she did not see any benefit to her client in having these witnesses reiterate to the jury on cross-examination the damaging details of their testimony on direct examination and that she did not want to open up those matters for the State to go over yet again on redirect examination. Later in her testimony, Payne explained, "I've never found it very conducive to a client to get up and reiterate over and over something that the State asked about, and I definitely don't see a need to reinforce it to the jury whenever that witness has said something derogatory or something that's against the Defendant . . . ." Payne's decisions not to cross-examine Cowart and Bragg were entirely reasonable and thus did not constitute deficient performance. See *Lawrence v. State*, 286 Ga. 533, 534 (2) (690 SE2d 801) (2010) (holding that "trial

9

counsel's decision not to cross-examine certain State's witnesses" to avoid giving them "a chance to further implicate [the defendant] with their emphasized testimony" was "reasonable trial strategy" that did not constitute deficient performance).

As to Harris and Bradford, Appellant did not ask Payne on direct examination why she decided not to cross-examine them, and the State did not address the subject with Payne on cross-examination. As our Supreme Court has previously explained, "when trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome the presumption that [her] conduct was reasonable." *Washington v. State*, 294 Ga. 560, 566 (3) (755 SE2d 160) (2014) (citation and punctuation omitted). "Without trial counsel's testimony or some other evidence explaining trial counsel's decision, [Appellant] cannot overcome the presumption that trial counsel's choice [not to cross-examine Harris and Bradford] — not patently unreasonable on [its] face — was strategic and reasonable." *Merritt v. State*, 310 Ga. 433, 436 (2) (a) (851 SE2d 555) (2020). Thus, Appellant has not shown that Payne was professionally deficient in failing to cross-examine Harris and Bradford.

10

Appellant also argues, obliquely, that Payne was professionally deficient in failing to properly cross-examine four of the State's witnesses, primarily on the ground that she failed to ask them a sufficient number of questions. Specifically, he contends that Payne provided deficient performance by failing to conduct a thorough and sifting cross-examination of G. T., Anderson, Investigator McCoy, and Kelli Altman, the Division of Family and Children Services County Director for two neighboring counties who filled in as a case manager for Toombs County on the day that G. T.'s abuse was first brought to the attention of law enforcement. However, as Payne aptly put it at the motion for new trial hearing when Appellant asked her to "reconcile . . . for the judge . . . the fact that the State asked more questions of [Appellant] during cross-examination than you asked all ten of the State's witnesses combined":

> I don't think the number of questions that any attorney asks has anything to, to do with how well they're representing their client because sometimes it's better if you ask no questions than ask a bunch of questions, depending on what the facts in the case [are] and how the trial is flowing at the time.

At the motion for new trial hearing, Payne testified that her questions to G. T. on cross-examination were designed to test the child's ability to distinguish between

11

a lie and telling the truth and thus went to the child's credibility. At trial, Anderson testified on direct examination about incriminating statements that Appellant had made during a juvenile court hearing months earlier, and a transcript of his testimony at the juvenile court hearing was introduced into evidence. At the motion for new trial hearing, Payne explained that she got Anderson to agree on cross-examination that if there were any discrepancies between the transcript of the juvenile court hearing and Anderson's trial testimony, the jury should believe the transcript over Anderson.

As to Altman, Payne testified that she established on cross-examination that when Appellant first met with Investigator McCoy, he did not admit to anything, and that it was only after Appellant met with Altman that he made any incriminating statements regarding the children. In addition, the trial transcript shows that Payne also got Altman to admit on cross-examination that Appellant voluntarily went to the Toombs County Sheriff's Office to address the allegations against him and that neither her initial meeting with Appellant to discuss a safety plan, nor her continued meeting with Appellant after she brought in Investigator McCoy to hear potentially incriminating statements that Appellant indicated he was about to make, were recorded. The only thing Appellant asked Payne about her cross-examination of

Investigator McCoy was whether she asked him any questions, and she said that she did. The State did not ask Payne any questions about her cross-examination of Investigator McCoy. However, the trial transcript shows that Payne got Investigator McCoy to admit on cross-examination that a "box full of sex toys" found under T. T.'s mattress that appeared in several pictures that the State displayed for the jury did not have "any relevance to" Appellant and that the sex toy that Appellant told Altman and Investigator McCoy he used on G. T. "[i]n a non-sexual way" was "[n]ever sent for any kind of testing."

In his brief on appeal, Appellant does not specify what additional questions Payne should have asked G. T., Anderson, Altman, or Investigator McCoy. Moreover, he did not call any of these witnesses to testify at the motion for new trial hearing so that his new counsel could ask them whatever questions Appellant now thinks Payne was professionally deficient in failing to ask them at trial. Thus, Appellant has not shown what beneficial information additional cross-examination of these witnesses would have yielded. As a result, he has failed to show that Payne performed deficiently in cross-examining G. T., Anderson, Altman, and Investigator McCoy. See *Jiles v. State*, 320 Ga. 605, 612—13 (2) (b) (910 SE2d 159) (2024).

Finally, to show *Strickland* prejudice from Payne's failure to cross-examine five of the State's witnesses and alleged failure to properly cross-examine four others, "Appellant was required to offer more than mere speculation that, absent the counsel's alleged errors, a different result probably would have occurred at trial." *Baker*, 293 Ga. at 815 (citation and punctuation omitted). Appellant has not shown what information cross-examination of the State's witnesses that Payne did not cross-examine would have produced, nor has he shown what information additional cross-examination of G. T., Anderson, Altman, and Investigator McCoy would have produced, that probably would have made a difference in the outcome of the trial. "Thus, [even] pretermitting the issue of deficient performance, Appellant failed to show any resulting prejudice, and his ineffective assistance of trial counsel claim fails." Id.

*Judgment affirmed. McFadden, P. J., and Hodges, J., concur.*